# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Eddrick Tompkins,
      Petitioner,

      vs.                       Case No. 1:09cv357
                                (Dlott, C.J.; Wehrman, M.J.)

Warden, Dayton Correctional
Institution,[1]
      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, who is currently in state custody at the Dayton Correctional Institution in Dayton, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's "Answer/Return Of Writ" with exhibits, and petitioner's "traverse" in reply to the return of writ. (Docs. 3, 10, 15).

### Background

On August 11, 2006, the Hamilton County, Ohio, grand jury indicted petitioner on one count of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A)(2) and one count of possession of cocaine in violation of Ohio Rev. Code § 2925.11(A). (Doc. 10, Ex. 1).

Prior to trial, petitioner's counsel filed a motion to suppress "all evidence ...

---

[1]In the petition, petitioner properly named the Warden of Chillicothe Correctional Institution (CCI) as respondent, because petitioner was incarcerated at CCI at that time. (*See* Doc. 3). On July 22, 2009, petitioner filed a notice of change of address, in which he states that he was transferred from CCI and is now incarcerated at the Dayton Correctional Institution (DCI) in Dayton, Ohio. (Doc. 5). Because it now appears that DCI's Warden is the individual who currently has custody of petitioner, the caption of the case is hereby changed to reflect the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

obtained as a result of the search and/or arrest of the Defendant." (*Id.,* Ex. 2). Respondent states in the return of writ that the "trial court did not hold a hearing on the matter, nor enter a decision." (*Id.,* Brief, p. 2). Apparently, the attorney who filed the motion to suppress withdrew at petitioner's request, and new counsel was appointed to represent petitioner at trial who did not pursue relief on the motion to suppress. (*See id.,* Ex. 9, p. 2).

The matter proceeded to trial before a jury, which acquitted petitioner of trafficking in cocaine but found him guilty on the cocaine possession charge. (*Id.,* Ex. 3). On November 13, 2006, petitioner was sentenced to an eight (8) year term of imprisonment to be served consecutively to a sentence imposed in another prior criminal case. (*Id.,* Ex. 4).

Counsel who represented petitioner at sentencing filed a timely notice of appeal on petitioner's behalf to the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 6). With the assistance of new counsel for appeal purposes, petitioner filed a brief raising nine assignments of error, which included the following claims:

1. The trial court erred to the prejudice of appellant's right to due process of law and his privilege against self incrimination by permitting the State to adduce evidence of statements purportedly made by appellant to police following his arrest, without receiving any warnings concerning the existence of and the waiver of the right to remain silent.

2. The trial court erred to the prejudice of appellant's right to due process of law under the Fourteenth Amendment, his right to be free from illegal search and seizure under the Fourth Amendment, his Fifth Amendment privilege against self incrimination and his Sixth Amendment right to counsel by failing to hear and decide appellant's pretrial motion to suppress evidence.

3. The trial court committed prejudicial error by entering judgment of conviction after a trial in which the prosecution committed misconduct sufficiently egregious as to deny appellant his Fourteenth Amendment due process right to a fair trial, and his Fifth Amendment privilege against self-incrimination.

4. The trial court erred to the prejudice of appellant in permitting the admission of hearsay evidence by the State, and in denying appellant his

Sixth Amendment right to confront and cross-examine his accusers.

5.  Appellant did not receive the effective assistance of counsel to which he is entitled under the Sixth and Fourteenth Amendments of the U.S. Constitution....

6.  The judgment of conviction is contrary to law and to the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States in that there was insufficient evidence adduced to establish each and every element of the offense beyond a reasonable doubt.

(*Id.,* Ex. 7).

On December 5, 2007, the Ohio Court of Appeals overruled each assignment of error and affirmed the trial court's judgment.  (*Id.*, Ex. 9).  In its decision, the state appellate court made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[2] regarding the incident that resulted in petitioner's conviction and sentence for cocaine possession:

On August 5, 2006, at about 2:00 a.m., Cincinnati police officer Thomas Schmid received a radio dispatch for "suspicious activity" on Hedge Avenue in Kennedy Heights.  As Schmid arrived on Hedge, he saw a white van that had been parked at the curb pull away without signaling.  When Schmid stopped the van, which was a cargo or work van without any rear seats, he saw only the driver and a passenger.  Schmid questioned the driver and asked for identification.  As Schmid was questioning the driver, another police officer arrived.  Schmid went to the passenger side of the van.  At that point, he noticed defendant-appellant Eddrick Tompkins lying down in the back of the van behind the seats.  Tompkins was lying on his side with his hands near a cardboard box.  Schmid asked Tompkins to step out of the van.

According to police, Tompkins was "fidgety" and appeared to be looking

_____

[2]Specifically, 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein.  Therefore, he has not shown that such findings are erroneous.

for a place to run. The officer asked Tompkins for identification, which he did not have. Tompkins gave police a false name and social-security number. He was then handcuffed. Tompkins eventually gave police his true name. When officers checked his name, they discovered that Tompkins had an open warrant. Tompkins was arrested and searched. Police found $291 and the residue of a substance that they suspected was crack cocaine in Tompkins's pocket. Tompkins was argumentative with police, stating that they were not doing their jobs correctly and that the substance in his pocket was not crack cocaine. The driver gave the police permission to search the van. The cardboard box contained a digital scale and a baggie of 14.84 grams of crack cocaine. Police state that, upon investigation, they determined that the cocaine belonged to Tompkins.

(*Id.,* pp. 1-2).

With the assistance of his appellate counsel, petitioner filed a timely appeal to the Supreme Court of Ohio from the direct appeal decision.[3] (*Id.,* Ex. 14). In the memorandum in support of jurisdiction, petitioner asserted seven propositions of law, including the following claims:

1. Statements, and instances of silence by a suspect in police custody are inadmissible under the Fifth Amendment where there is nothing in the record showing that the suspect has been advised of his "Miranda" rights.

2. Due process requires that a pretrial motion to suppress evidence in a criminal case be heard and decided pretrial.

3. Egregious police and prosecutorial misconduct which prejudices the right of the accused to the fundamentally fair trial to which he is constitutionally entitled violates his right to due process of law under the Fourteenth Amendment to the U.S. Constitution ... and requires reversal of his conviction.

---

[3]Before appealing to the state supreme court, petitioner's appellate counsel filed an application for reconsideration with the Ohio Court of Appeals, which was later amended. (Doc. 10, Exs. 10-11). On January 9, 2008, the Ohio Court of Appeals overruled the motion without opinion. (*Id.,* Ex. 13).

4

4.  Where prejudicial hearsay evidence is admitted, the declarant is not available to testify, and the evidence is offered for its truth, the accused has been denied his right to confrontation under the Sixth Amendment.

5.  Where defense counsel in a criminal case provides deficient representation so that the trial cannot be relied upon to produce a just result, the accused has been denied his right to the effective assistance of counsel secured to him by the Sixth and Fourteenth Amendments to the U.S. Constitution....

6.  Mere presence in an area in which contraband is found, without more, is insufficient to prove possession, actual or constructive, of drugs, rendering a conviction of possession a violation of due process of law [under] the 14th Amendment.

(*Id.,* Ex. 15).

On April 28, 2008, the state supreme court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 16).[4]

Petitioner commenced the instant habeas corpus action in May 2009. In the petition, he alleges four grounds for relief:

**Ground One:** The State adduced evidence of statements purportedly made by defendant to police following arrest without receiving any warnings concerning the existence of and waiver of the right to remain silent.

**Ground Two:** [The trial court violated petitioner's] Due Process right under the [F]ourth Amendment and his [F]ifth Amendment Privilege

---

[4]While his appeal was pending in the Ohio courts, petitioner also filed *pro se* applications for post-conviction relief with the trial court. In the first motion filed in May 2007, petitioner alleged that his trial counsel was ineffective. (Doc. 10, Ex. 17). The trial court denied the application on June 29, 2007, and petitioner did not pursue an appeal from this ruling. (*Id.,* Brief, p. 5 & Ex. 19). Petitioner filed a second "motion to vacate sentences as void ab in[i]tio" in December 2007, which was denied by the trial court without opinion on December 21, 2007. (*Id.,* Exs. 20-21). Again, petitioner did not pursue an appeal from the trial court's ruling. (*Id.,* Brief, p. 6).

5

against self incrimination and his [S]ixth Amendment right to Counsel by failing to hear and decide [his] pre-trial motion to suppress.

**Ground Three:** The trial court committed prejudicial error by entering judg[]ment of conviction after a trial in which the prosecutor committed misconduct.

**Ground Four:** The trial court erred to the prejudice of appellant in permitting the admission of hearsay evidence by the State and denying appellant his Sixth Amendment right to confront and cross examine his accusers.

(Doc. 3, pp. 6, 8, 9, 11).

In his "traverse" brief filed in reply to the return of writ, petitioner alleges two more claims although he has not sought to amend the petition to add them as grounds for relief. Specifically, petitioner alleges that his trial counsel was ineffective in failing to pursue a hearing and ruling on the pretrial suppression motion; failing to object to the prosecutor's misconduct in opening and closing arguments; and failing to object to the hearsay and opinion testimony of an "officer-witness." (Doc. 15, pp. 7-8). Petitioner further alleges that the evidence of his "[m]ere presence in an area in which the contraband [was] found" was insufficient to support his conviction for possession of cocaine. (*Id.,* p. 8).

In the return of writ filed in response to the petition, respondent addresses only the four claims that were asserted as grounds for relief in the petition. (Doc. 10).

## OPINION

### A.  Petitioner Has Not Demonstrated He Is Entitled To Relief Based On The *Miranda* Claim Alleged In Ground One, Because The Claim Is Waived And, In Any Event, Has Not Been Shown To Have Merit

In Ground One of the petition, petitioner alleges that statements he made to the police at the scene of his arrest were improperly admitted into evidence at trial in the absence of any showing that petitioner was advised of and waived his Fifth Amendment rights as guaranteed in *Miranda v. Arizona,* 384 U.S. 436 (1966). (Doc. 3, p. 6).

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing this claim, which was raised by petitioner on direct appeal. The court ruled in relevant part:

> The record does not reflect whether the *Miranda* warnings were given. The question was not addressed by either the defense or the prosecution. Tompkins's brief does not set forth the specific statements about which he is complaining, and it does not contain any citations to the record pointing out where the alleged error occurred. The brief merely states that "several statements" made by Tompkins "both pre and post arrest" played a "considerable role" in determining who owned the crack cocaine.

> Where a defendant does not make any reference to specific portions of the transcript on which a claim of error is predicated, the appellate court need not address the issue. It is not the appellate court's duty to search the record for evidence to support the defendant's argument concerning an alleged error.

> The record does not support the claim that any statements by Tompkins were pivotal in determining who owned the cocaine. Tompkins did not make any incriminating statements. As Tompkins notes in his brief, there were no defense objections to any statements. Therefore, plain-error analysis applies. The record does not demonstrate that absent any statements made by Tompkins the outcome of the trial would have been different....

(Doc. 10, Ex. 9, pp. 2-3).

In the return of writ, respondent contends that petitioner procedurally defaulted this claim for relief in the state courts because (1) he did not adequately present the issue in his appellate brief in accordance with requirements set forth in Ohio R. App. P. 12(A) and 16(A)(7); and (2) "no defense objections" were asserted at trial against the admission of any of the challenged statements. (*See* Doc. 10, pp. 9-11). Respondent further argues that because the Ohio Court of Appeals relied on these state procedural defaults in addressing petitioner's claim solely for "plain error," the claim is waived for purposes of federal habeas review. (*Id.*).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  If a petitioner fails to fairly present a claim through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of such claim by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue the claim in the state courts, his claim for habeas corpus relief is subject to dismissal with prejudice on the ground that it is waived.  *See O'Sullivan v.  Boerckel,* 526 U.S. 838, 847-48 (1999); *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision.  *Harris* 489 U.S. at 260-62.  The "adequate and independent state ground" doctrine has been applied to state court decisions refusing to address the merits of a federal claim because of violations of state procedural rules, including the failure to make a timely objection at trial.  *Id.* at 261; *see also Sykes,* 433 U.S. at 86-87; *McBee,* 763 F.2d at 813.

Such a procedural default does not bar consideration of the federal claim unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar. *Harris,* 489 U.S. at 263.  In cases where

the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In this case, the Ohio Court of Appeals clearly and expressly stated, in reliance on Ohio R. App. P. 12(A) and 16(A)(7), that it "need not to address the issue" alleged in Ground One of the petition because petitioner's brief neither "set forth the specific statements about which he is complaining" nor "contain[ed] any citations to the record pointing out where the alleged error occurred." (Doc. 10, Ex. 9, pp. 2-3 & n.2).[5] Moreover, the court stated further that because defense counsel had not objected at trial to the admission of any of petitioner's statements to the police, the record was subject to review only for "plain error." (*Id.,* p. 3). By thus confining the court's review to "plain error" under state law, petitioner committed a procedural default to the extent he thereby removed or, in other words, failed to "fairly present" his federal constitutional claim to the state courts. *Cf. McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).

As respondent has argued, the state appellate court's review solely for plain error does not constitute a waiver or non-enforcement of the state procedural bar by the reviewing court. *See, e.g., Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003); *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz,* 869 F.2d 281, 284-85 (6th Cir. 1989)), *cert. denied,* 532 U.S. 989 (2001). Moreover, the Ohio Supreme Court's later unexplained decision summarily dismissing petitioner's appeal from that decision "as not involving any substantial constitutional question" must be presumed to rely on the same procedural default. *See Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine*

---

[5]Ohio R. App. P. 16(A)(7) provides in pertinent part that "[t]he appellant shall include in its brief ... [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the ... parts of the record on which the appellant relies." Under Ohio R. App. P. 12(A)(2), the court of appeals is expressly permitted to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

*v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001). Therefore, petitioner's procedural defaults bar consideration of the claim alleged in Ground One absent a showing of cause and prejudice or that a "fundamental miscarriage of justice" will result if the claim is not considered. *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Here, petitioner has not argued or otherwise demonstrated that failure to consider his *Miranda* claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Petitioner has argued as "cause" for his default in both the state courts and in the instant action that his trial counsel was ineffective in failing to pursue a hearing and ruling on his pretrial suppression motion, which included a general request to suppress "all statements made by Defendant" in the absence of evidence of the arresting officer's compliance with the "procedural safeguards of *Miranda*." (*See* Doc. 10, Ex. 2; Ex. 7, p. 10; Ex. 15, pp. 14-15; *see also* Doc. 15, pp. 7-8). Although ineffective assistance of counsel may constitute cause for a procedural default, *see, e.g., Murray,* 477 U.S. at 488, petitioner's contention is insufficient to establish cause for his separate default involving the failure to specify in his appellate brief the "portions of the [trial] transcript on which [the] claim of error is predicated." (*See* Doc. 10, Ex. 9, p. 3).

In any event, petitioner has not demonstrated that his trial counsel was ineffective in failing to assert an objection or pursue a ruling on the *Miranda* claim that another attorney raised, also in conclusory terms, in the pretrial suppression motion.

To establish that his trial counsel was ineffective, petitioner must demonstrate both (1) counsel made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Under the first prong of the *Strickland* test, petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable

probability" exists that, but for his counsel's error, the trial outcome would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the trial result would "reasonably likely have been different absent the errors." *Id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id.* at 697.

Here, petitioner has not demonstrated under the second prong of the *Strickland* test that any error by his trial counsel in failing to assert an objection or pursue a ruling on the *Miranda* claim prejudiced the defense. The Fifth Amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself." In *Miranda,* the Supreme Court recognized that the atmosphere of custodial interrogation in and of itself is inherently coercive. *Miranda,* 384 U.S. at 458. In order to ensure that the Fifth Amendment privilege against self-incrimination is not undermined in such a situation, the Supreme Court established certain procedural safeguards for counteracting the compelling pressures inherent in the custodial interrogation setting. *See id.* at 444. *Miranda* requires that prior to any questioning in such a setting, the person being interrogated must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. *See id.*

Statements obtained in violation of *Miranda* must be excluded from the prosecution's case-in-chief even if the statements were otherwise voluntary within the meaning of the Fifth Amendment. *Oregon v. Elstad,* 470 U.S. 298, 307 (1985). A *Miranda* violation does not constitute coercion and is not in itself a violation of the Fifth Amendment. However, it does create an irrebuttable presumption of compulsion, requiring the suppression of all statements made in violation of *Miranda* for purposes of the prosecution's case-in-chief. *Id.* at 306-07 & n.1.

*Miranda* applies only in situations involving "custodial interrogation," which is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444. Such interrogation includes "words or actions that, given the officer's knowledge of any special susceptibilities of the suspect, the officer knows or reasonably should know are likely to 'have ... the force

11

of a question on the accused' ... and therefore be reasonably likely to elicit an incriminating response." *United States v. Clark,* 982 F.2d 965, 968 (6th Cir. 1993) (quoting *Pennsylvania v. Muniz,* 496 U.S. 582, 601 (1990) (plurality opinion)).

Statements that are not made in response to express police questioning, or "words and actions on the part of police ... that the police should know are reasonably likely to elicit an incriminating response," do not require the procedural safeguards of *Miranda. Rhode Island v. Innis,* 446 U.S. 291, 300-02 (1980). Therefore, voluntary statements made by a person in custody in the absence of express questioning or other compelling influences exerted by the interrogator may be introduced into evidence at trial. *See id.; see also United States v. Murphy,* 107 F.3d 1199, 1204 (6th Cir. 1997); *United States v. Crowder,* 62 F.3d 782, 785-86 (6th Cir. 1995), *cert. denied,* 516 U.S. 1057 (1996); *Clark,* 982 F.2d at 967-68.

In addition, a request for routine biographical information for identification purposes, such as "questions posed 'to secure the personal history data necessary to complete the booking process,'" are "exempt from *Miranda*'s coverage." *See, e.g., Muniz,* 496 U.S. at 601; *United States v. Broadus,* 7 F.3d 460, 464 (6th Cir. 1993); *United States v. Lopez,* 915 F.Supp. 891, 900 (E.D. Mich. 1996); *cf. United States v. Brown,* 101 F.3d 1272, 1274 (8th Cir. 1996) (and cases cited therein) (holding that the defendant's statement of a false name at the scene of his arrest in answer to a question that was necessary to the booking process and "not directly relevant to the substantive offense charged, but wholly incidental," falls with the "routine booking question" exception to *Miranda*). Only if the law enforcement officer "should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the questioning be subject to scrutiny" under *Miranda. United States v. Ochoa-Gonzalez,* 598 F.3d 1033, 1038 (8th Cir. 2010) (quoting *Brown,* 101 F.3d at 1274 (in turn quoting *United States v. McLaughlin,* 777 F.2d 388, 391-92 (8th Cir. 1985)).

In this case, the record reveals that petitioner was asked by the police at the scene what his name and social security number were for identification purposes, immediately after he was discovered lying in the back of the van and ordered to exit the vehicle. (Doc. 10, Trial Tr. 179-80, 229). There is no evidence in the record even remotely suggesting that at that time, the police officers would been reasonably aware that the information sought for merely "basic identification purposes" was "directly relevant to the substantive offense charged." Indeed, the cocaine, which resulted in petitioner's indictment for trafficking and possession, was not discovered until *after*

petitioner gave false statements in response to those questions and the police ultimately learned that there was an open warrant out for his arrest.  Petitioner's false, and therefore incriminating, statements regarding his identity were exempt from *Miranda*'s coverage and admissible at trial.

When asked on direct examination about his knowledge of petitioner's relationship with the other individuals in the van, Officer Schmid testified that petitioner had told him that "they had picked him up at a party, however, no one could tell me where the party was or what the party would have been for." (*Id.,* Trial Tr. 192-93).  Moreover, Schmid testified that he questioned petitioner after arresting him about $291 that was recovered in the search incident to petitioner's arrest, and asked petitioner if he was employed. (*Id.,* Trial Tr. 189-90).  Petitioner responded that he worked "sporadically" on a part-time basis for an environmental company owned by his uncle or another person, and did not explain to Schmid "where he had got the money" recovered from his pocket. (*Id.*, Trial Tr. 190).  To the extent petitioner's responses to these questions were covered by *Miranda* and thus subject to suppression in the absence of *Miranda* warnings, they were either not particularly relevant or incriminating or so non-responsive that it is highly unlikely that they had any impact on the jury's determination of petitioner's guilt or innocence on the cocaine possession charge.[6]

No other testimony was elicited at trial regarding statements made by petitioner to the police except to the extent that Cincinnati police officer Thomas Schmid testified on direct examination that, when he searched petitioner and recovered the money and found "what appeared to be crack cocaine residue in his pocket," petitioner became "very argumentative" and said that "it wasn't crack and that we were not doing our jobs correctly and statements like that." (*Id.,* Trial Tr. 181, 183).  There is no evidence in the record to suggest that these statements by petitioner were made in response to any express questioning or other compelling influences exerted by the police.  As voluntary statements, they were admissible.

Upon review of the trial transcript, it therefore appears highly unlikely that if petitioner's trial counsel had objected at trial or pursued a ruling on the *Miranda* claim that was raised in petitioner's pretrial suppression motion, the trial court would have

---

[6]Indeed, to the extent the line of questioning pertained to the money found in petitioner's pocket, it was more relevant to the trafficking charge which the jury ultimately determined petitioner was not guilty of committing.

suppressed the challenged statements upon any finding that the police had failed to give required *Miranda* warnings on petitioner's arrest at the scene. Moreover, even assuming, *arguendo,* that the statements would or should have been suppressed, it is still not reasonably likely that the result of the trial would have been different. The most incriminating statements that petitioner made to the police were when he lied about his identity. It is unlikely that the jury convicted petitioner on the cocaine possession charge based on these statements. In contrast, it is highly likely that the jury's verdict was based on the officers' testimony that it was their opinion that petitioner was the one in the van in possession of the crack cocaine due to his "fidgety" demeanor and lack of cooperation in comparison to the other suspects; the substance found in his pocket that appeared to be crack cocaine residue; and most importantly, how and where he was discovered in the back of the van in an apparent attempt to escape detection and in the closest proximity to the cocaine recovered from the vehicle.

Accordingly, in sum, the Court concludes that trial counsel's failure to object at trial or pursue a ruling on the *Miranda* claim raised in the pretrial suppression motion did not amount to ineffective assistance sufficient to constitute "cause" for petitioner's procedural default of the claim alleged in Ground One of the petition. In the absence of a showing that failure to consider the claim will result in a fundamental miscarriage of justice, petitioner has waived this ground for relief due to his procedural defaults in the state courts. In any event, petitioner has not shown that the evidence elicited at trial about statements he made to police either fell within *Miranda*'s proscription or otherwise prejudicially affected the reliability of the trial result. Petitioner, therefore, is not entitled to habeas relief based on the claim of a *Miranda* violation alleged in Ground One of the petition.

### B. Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Two That The Trial Court's Failure To Rule On His Pretrial Suppression Motion Amounted To A Due Process Violation

In Ground Two of the petition, petitioner alleges that he was denied due process when the trial court failed to hear and decide his pretrial motion to suppress statements he made to the police, as well as evidence obtained during the search of his person under either a "stop and frisk" or a "search incident to arrest" theory. (Doc. 3, p. 8;

14

*see also* Doc. 10, Ex. 2).[7]  The Ohio Court of Appeals was the only state court to issue a reasoned decision rejecting this claim of error on direct appeal.  The court held that under Ohio law, although "[i]t is erroneous for a trial court to fail to rule on a motion to suppress prior to trial," the error was harmless because the record did not demonstrate that petitioner's "substantial rights were adversely affected."  (Doc. 10, Ex. 9, pp. 3-4).

Respondent argues in the return of writ that the claim alleged in Ground Two raises an issue of state law only, which is not cognizable in this federal habeas proceeding.  (*Id.*, Brief, p. 7).  As respondent has contended, a federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  This Court's review, therefore, is limited to consideration of the federal constitutional issue, which was fairly presented to the state courts, as to whether the alleged error under state law deprived petitioner of his due process right to a fundamentally fair trial.  *See Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988).

Here, as discussed above in addressing petitioner's *Miranda* claim alleged in Ground One, petitioner has not demonstrated that his constitutional rights were violated or that he was otherwise denied a fair trial by the admission of any statements that he made to the police.

Upon review of the record, the Court further finds that the evidence obtained during the search of petitioner's person was admissible at trial because the search and seizure did not violate petitioner's rights under the Fourth Amendment.  Contrary to petitioner's contention in his state appellate brief (*see* Doc. 10, Ex. 7, pp. 3-4), the record reveals that the police had probable cause for initiating a traffic stop of the van not only for exiting the curb without using a turn signal, but also because as soon as the police officer turned his vehicle into the street where "suspicious activity" had been reported, "the van [which had been parked there] decided to leave the area."  (*Id.,*

---

[7]Upon review of petitioner's pretrial suppression motion, it does *not* appear that petitioner sought to suppress evidence pertaining to the crack cocaine obtained from the search of the van.  (*See* Doc. 10, Ex. 2).

Trial Tr. 172-74).  More specifically, the contested search of petitioner did not occur until *after* he was arrested upon discovery by the police that there was an "open warrant" out for his arrest.  (*Id.,* Tr. 180-81).  The police clearly had probable cause to arrest petitioner at that juncture, and the evidence obtained from the search incident to the arrest did not trigger Fourth Amendment concerns.  *See, e.g., Chimel v. California,* 395 U.S. 752, 762-63 (1969); *contrast Smith v. Ohio,* 494 U.S. 541, 542-43 (1990) (involving search and seizure of contraband immediately *before* the defendant's arrest).

Because it appears from the record that there is no merit to petitioner's claims that his statements to the police and evidence seized during the search of his person at the scene of his arrest were obtained in violation of his Fourth and Fifth Amendment rights, or that any error in admitting his statements to the police prejudicially affected the jury's verdict, petitioner has not demonstrated that the trial court's failure to rule on his pretrial suppression motion deprived him of a fundamentally fair trial.  Petitioner, therefore, is not entitled to relief based on the claim of constitutional error alleged in Ground Two of the petition.

## C.  Petitioner Has Not Demonstrated He Is Entitled To Relief Based On The Prosecutorial Misconduct Claim Alleged in Ground Three

In Ground Three of the petition, petitioner alleges he was denied a fair trial by the prosecutor's egregious misconduct.  (Doc. 3, p. 9).  Although petitioner has not set forth specific facts in support of this claim in his habeas petition, he did state the factual bases for the claim in his brief on direct appeal to the Ohio Court of Appeals. (*See* Doc. 10, Ex. 7, pp. 5-7).

First, petitioner challenged certain comments that the prosecutor made in opening and closing arguments.  Specifically, petitioner contended that the prosecutor improperly commented on the evidence in his opening statement when he "flatly stated" that petitioner had "lied" in response to the arresting officer's request for information.  (Doc. 10, Ex. 7, p. 6).  Petitioner also argued that in closing argument, the prosecutor used a "variation of the 'golden rule' argument, ... which is impermissible," when he asked the jurors "to place themselves 'in the shoes' of the officers at the scene, and argued that the officers had to decide on the spot whom to

charge with the drug offenses;"[8] improperly commented on petitioner's pre-arrest silence by arguing that petitioner was the one in the van who did not "want to disclose his identity or make himself known to the officers;" and improperly pointed out that petitioner did not provide an explanation for the money that was recovered during the search of his person.  (*Id.,* pp. 5-6).

Petitioner also challenged certain testimony that was elicited by the prosecutor at trial.  Specifically, petitioner claimed that the prosecutor improperly elicited testimony from Officer Schmid regarding (1) petitioner's failure to explain the money that was found on his person or the cocaine recovered from the van, which amounted to a comment on petitioner's "silence;" (2) certain hearsay statements made by the other occupants of the van; and (3) his opinion "as to the guilt of the Defendant" without any "foundation laid to show the officer was some sort of expert."  (*Id.*, pp. 6-7).

The Ohio Court of Appeals, as the only state court to issue a reasoned decision addressing the allegations that were raised on direct appeal, summarily determined that the prosecutor's challenged conduct did not deprive petitioner of a fair trial.  (*See id.*, Ex. 9, p. 4).  Citing a state supreme court case in a footnote, the court of appeals rejected each claim of misconduct as follows:

> ....The prosecutor's comment asking the jury to put itself "in the shoes of the police" was not an improper use of the "golden rule" argument, but a comment on the evidence that showed why the police had focused on Tompkins as the owner of the cocaine.  Comments by the prosecutor that Tompkins had lied to the police were true and were proper comments on the evidence.  Comments by the police officer that he had investigated the other occupants of the van and that his investigation had led him to believe that Tompkins owned the cocaine were not inadmissible expert opinions or hearsay.  Comments by the prosecutor

---

[8]In general, "Golden Rule" arguments are arguments by the prosecutor asking the jurors to place themselves in the position of the victim; these arguments encouraging "juror identification with crime victims" are prohibited as an improper appeal to the jury's emotions. *See, e.g., Johnson v. Bell,* 525 F.3d 466, 484 (6th Cir. 2008), *cert. denied,* 129 S.Ct. 1668 (2009); *see also Bedford v. Collins,* 567 F.3d 225, 234 (6th Cir. 2009), *cert. denied,* 130 S.Ct. 2344 (2010); *Doorbal v. Dep't of Corr.,* 572 F.3d 1222, 1225 (11th Cir.), *cert. denied,* 130 S.Ct. 637 (2009).

that Tompkins had not explained the money in his pocket or why the cocaine was found in his vicinity may have been improper comments on Tompkins's silence, but a complete reading of the record makes it clear that the comments did not deprive Tompkins of a fair trial.

(*Id.*).

In this federal habeas proceeding, the scope of review of petitioner's prosecutorial misconduct claims is narrow because the federal court does not sit as an appellate court with supervisory power to rectify general trial errors. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974). Although preliminarily the court confronted with a such a claim must determine whether the challenged conduct was improper, a finding of impropriety is not sufficient in itself to amount to a due process violation. *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 179-80 (1986). Rather, "[t]he touchstone of due process analysis in such a case is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).

Where, as here, no specific constitutional right is alleged to have been infringed by the prosecutor, petitioner's allegations concern ordinary trial error, which will not amount to a constitutional violation unless the misconduct "so infected the trial with unfairness as to render the resulting conviction a denial of due process." *Donnelly,* 416 U.S. at 642-43; *see also Darden,* 477 U.S. at 181 ("it 'is not enough that the prosecutor's remarks were undesirable or even universally condemned[;]'" rather, the "relevant question" is whether the prosecutor's challenged conduct rendered the trial fundamentally unfair in violation of due process). The alleged misconduct must be examined within the context of the entire trial to determine whether it deprived the defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985).

Factors to be considered in weighing whether a prosecutor's misconduct amounts to a due process violation are: (1) the degree to which the misconduct has a tendency to mislead the jury and to prejudice the accused, *see Darden,* 477 U.S. at 182, and *Young,* 470 U.S. at 12; (2) whether the misconduct is isolated or extensive, *see Donnelly*, 416 U.S. at 646; (3) whether the misconduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182, and *Berger v. United States,* 295 U.S. 78, 84-85 (1935); (5) the strength of the competent proof to establish the guilt of the accused, *see Darden,* 477 U.S. at 182; (6) whether the misconduct was objected to by defense counsel, *see id.* at 182-83 & n.14, and *Young,* 470 U.S. at 13; and (7) whether a curative instruction was given

18

by the trial judge, *see Darden,* 477 U.S. at 182.[9]

Even if it is determined that constitutional error occurred, federal habeas relief may not be granted unless the error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)). Petitioner must meet the *Brecht* standard before he may obtain federal habeas relief for any constitutional error committed by the prosecutor as alleged herein. *Cf. Gordon v. Kelly*, 205 F.3d 1340 (table), No. 98-1905, 2000 WL 145144, at **12 (6th Cir. Feb. 1, 2000) (unpublished); *Hensley v. McGinnis,* 188 F.3d 507 (table), No. 98-1675, 1999 WL 685932, at **3-4 (6th Cir. Aug. 25, 1999) (unpublished).

As an initial matter, upon review of the trial transcript, the Court agrees with the Ohio Court of Appeals' finding that the prosecutor did not engage in any impropriety when he remarked in his opening statement that petitioner "lied to the officers" when they asked him for his "name and identifying information." (*See* Doc. 10, Trial Tr. 164). The State presented evidence at trial, which the defense did not attempt to refute, establishing that petitioner gave a false name and social security number in response to the officer's initial requests for identification information. As the state appellate court found, the opening statement remark, which accurately conveyed what the evidence introduced at trial would ultimately establish, was not improper.

Moreover, as the Ohio Court of Appeals reasonably determined, the challenged remarks made by the prosecutor during closing and rebuttal arguments did not rise to the level of a due process violation. As petitioner pointed out in his appellate brief, the prosecutor stated at the end of his initial closing argument that petitioner had given no explanation "as to why that [large quantity of] money" was in his pocket. (*Id.,* Trial Tr. 259). As the Ohio Court of Appeals found, this remark may have constituted

---

[9]*See also Gillard v. Mitchell,* 445 F.3d 883, 897 (6th Cir. 2006) (citing *Bowling v. Parker,* 344 F.3d 487, 512-13 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004)), *cert. denied,* 549 U.S. 1264 (2007); *Farmer v. Hofbauer,* 1 Fed.Appx. 372, 377-78 (6th Cir. Jan. 10, 2001) (not published in Federal Reporter); *Givens v. Yukins,* 238 F.3d 420 (table), No. 98-2429, 2000 WL 1828484, at **6-7 (6th Cir. Dec. 5, 2000) (unpublished); *Gordon v. Kelly,* 205 F.3d 1340 (table), No. 98-1905, 2000 WL 145144, at **7 (6th Cir. Feb. 1, 2000) (unpublished); *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.) (citing *Serra v. Michigan Dep't of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993), *cert. denied,* 510 U.S. 1201 (1994)), *cert. denied,* 522 U.S. 1001 (1997).

an improper comment on petitioner's silence. However, it was a passing non-inflammatory remark, which did not mislead the jury or prejudice the defense. When viewed in the context of the entire record, it appears that the prosecutor made this statement as part of a larger argument for finding petitioner guilty on the cocaine trafficking charge. (*See id.*, Trial Tr. 259-60). The jury acquitted petitioner on that charge. Therefore, it appears clear from the record that the remark had no substantial or injurious effect or influence on the jury in determining its verdicts.

The remaining challenged remarks were made by the prosecutor during rebuttal argument in response to defense counsel's closing, wherein counsel argued that the case involved a "charge by choice" by Officer Schmid and that the State had not met its burden of proving beyond a reasonable doubt that petitioner, as opposed to the two other occupants of the van, was the one guilty of possessing the cocaine found in the vehicle and of trafficking the drug. (*See id.,* Trial Tr. 262-71). In assessing whether prejudicial error occurred in this "invited response" context, the court "must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." *United States v. Henry,* 545 F.3d 367, 381 (6th Cir. 2008) (quoting *Young,* 470 U.S. at 12). If found that the prosecutor's remarks were indeed "'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." *Id.* (quoting *Young,* 470 U.S. at 12-13).[10]

The Court finds no impropriety in the prosecutor's rebuttal statement to the effect that it was a "reasonable choice" of the police officers to charge petitioner because he was the "one who didn't want to disclose his identity or make himself known to the police officers." (*See* Doc. 10, Trial Tr. 274). Contrary to petitioner's contention in his state appellate brief (*see id.,* Ex. 7, pp. 5-6), the statement was not an improper comment on petitioner's silence. Evidence had been presented at trial

---

[10]In *Henry,* the Sixth Circuit cited the following example of an "invited response" that did not amount to reversible error: "Although '[a] governmental attorney has a duty not to express a personal opinion or belief regarding the truth or falsity of any testimony or evidence,' the government may attempt to explain why, based on the facts, that witness's testimony is honest after the same has been attacked by the defense." *Henry,* 545 F.3d at 379 (quoting *United States v. Hurst,* 951 F.2d 1490, 1502 (6th Cir. 1991) (in turn citing *Young,* 470 U.S. at 8), *cert. denied,* 504 U.S. 915 (1992)); *cf. Hinkle v. Randle,* 271 F.3d 239, 245-46 (6th Cir. 2001) (holding that "[w]hile the prosecutor's remarks [in rebuttal argument] had the effect of bolstering the reliability of DNA evidence in general, they came in response to the defense counsel's invitation to comment on the state of the accuracy and reliability of DNA evidence" ).

that petitioner gave false information to the police about his identity and that he was discovered lying in the back of the van in what appeared to be an attempt to escape detection by the police.  The remark, therefore, had an evidentiary basis and did no more than respond substantially to defense counsel's closing argument in order to "right the scale."  In addition, although the prosecutor's remark requesting the jury to place itself "in the shoes of" the police officers arguably exceeded the bounds of propriety (*see id.*, Trial Tr. 274), when viewed in the context of the entire record, the Court is convinced that the jury was not misled or otherwise influenced by that one passing "invited" comment to convict petitioner on the basis of prejudice or an improper identification with the police officers as opposed to the evidence.  Indeed, the fact that the jury ended up acquitting petitioner on one of the charges suggests otherwise.

Finally, the Court rejects petitioner's claim that he was denied a fair trial by the prosecutor's alleged misconduct in eliciting certain testimony from Officer Schmid. As discussed above, to the extent that petitioner claims that evidence was improperly introduced regarding his failure to explain the money that was found on his person (*see id.,* Trial Tr. 190), such error did not mislead the jury or prejudice the defense because the evidence pertained to the cocaine trafficking charge of which he was acquitted.  The prosecutor did ask Schmid at the close of direct examination the general question whether petitioner made "any other statements ... regarding the reasons why that property was found in his vicinity," to which Schmid responded: "No."  (*See id.,* Tr. 194).[11]  Even assuming the question and answer could be construed as an improper comment on petitioner's silence as petitioner has contended, it was an isolated incident; the question elicited such a vague and general response that it is unlikely that the jury was misled by, relied on, or even remembered this testimony in determining petitioner's guilt or innocence on the possession charge.

Petitioner has claimed that the prosecutor improperly elicited hearsay testimony during the following portion of Schmid's direct examination for the purpose of establishing petitioner's guilt on the charges, as opposed to the other occupants of the van:

---

[11]On cross-examination, in response to a question posed by defense counsel, Officer Schmid stated that "he did not tell me anything."  (Doc. 10, Trial Tr. 203).  Petitioner cited this testimony as another example of prosecutorial misconduct in his state appellate brief.  (*Id.,* Ex. 7, p. 6).  However, because the statement was not elicited by the prosecutor, the allegation is unfounded.

Q. ....Now were the other individuals, the person in the driver's seat and the passenger person in the passenger seat, were they cooperative with you?

A. Very cooperative, yes, ma'am.

Q. Okay. Did you explore the possibility that the crack cocaine that you recovered could have been in the possession of or property of one of the other individuals?

A. I did. I asked them that.

Q. You can't tell us what they said. But did you investigate that?

A. Yes.

Q. Okay. And through the course of your investigation why did you conclude or why did you come to believe that the crack cocaine that you recovered from the inside of the van should be attributed to Mr. T[ompkins]?

A. Based on my investigation that was the only that was in the area of the crack cocaine. His hands were very near the place that we found the crack cocaine and the other two did not have direct access to that area of the vehicle.

(*Id.,* Ex. 7, p. 6 & Trial Tr. 191-92).

Contrary to petitioner's contention, no hearsay statements were introduced during this colloquy. The prosecutor did not ask Schmid, even in a round-about way as petitioner has suggested, for any information stemming from his conversations with the two other occupants of the van. When Schmid stated in response to a general question about the scope of his investigation that he had asked the two men about their involvement with the crack cocaine recovered from the vehicle, the prosecutor would not let Schmid testify further about what was said and immediately changed the line of questioning. Moreover, when explaining why he decided that petitioner was the one who should be charged with the drug offenses, Schmid did not rely on the

22

substance of any conversations he may have had with the other occupants in the van, but rather on the fact that as opposed to those two individuals, petitioner was found in the area of the van where the crack cocaine was located.  Therefore, as the Ohio Court of Appeals reasonably determined, the prosecutor did not improperly introduce hearsay testimony to establish petitioner's guilt at trial.

Petitioner's final allegation of misconduct is that the prosecutor improperly elicited opinion testimony from Officer Schmid based on Schmid's approximately four and one-half years of "experience" as a police officer without laying a foundation "to show the officer was some sort of expert."  (Doc. 10, Ex. 7, p. 7).  Contrary to petitioner's contention, Schmid did not testify as an expert.  He merely testified about the events he witnessed and the actions he took and conclusions he reached from his observations as the police officer who responded to the scene and initiated the traffic stop of the van that led to petitioner's discovery and arrest.  Schmid testified that he had received training at the police academy "on what the narcotics look like" and that in his years of experience as a police officer, he came in contact with crack cocaine "at least once or twice a week."  (*Id.,* Trial Tr. 169-71).  He, therefore, was qualified to testify that he observed "what appeared to be crack cocaine residue" in petitioner's pocket when conducting a search of petitioner upon his arrest on the open warrant.  (*See id.,* Trial Tr. 181-82).  It was also proper for the prosecutor to question Schmid, as well as another police officer who responded to the scene, regarding why they reached the conclusion as the investigating and arresting officers that petitioner was the one in the van who was in possession of the crack cocaine recovered from the vehicle.

Accordingly, in sum, upon review of the merits of each allegation of prosecutorial misconduct that was presented by petitioner on direct appeal to the Ohio Court of Appeals, this Court agrees with the state court's determination that the prosecutor's challenged conduct did not deprive petitioner of a fair trial.  In any event, it appears clear from the record that any misconduct by the prosecutor had no substantial or injurious effect or influence on the jury in determining its verdicts.  Therefore, petitioner is not entitled to habeas relief based on the claim of constitutional error alleged in Ground Three of the petition.

### D.  Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Four That Hearsay Evidence Was Improperly Admitted At Trial

In Ground Four of the petition, petitioner claims that the trial court erred to his

prejudice when it allowed the State to introduce hearsay evidence at trial in violation of his Sixth Amendment right to confront the witnesses against him. (Doc. 3, p. 11). Petitioner does not allege any facts in support of this claim in the petition. However, it appears from his brief on appeal to the Ohio Court of Appeals that the claim is based on the colloquy quoted above, *see supra* p. 22, occurring during Officer Schmid's direct examination, which was cited by petitioner in support of his corollary prosecutorial misconduct claim. (*See* Doc. 10, Ex. 7, p. 8). This Court's review is limited to that claim because it was the only one raised by petitioner to the state courts. *See* U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).

On direct appeal, the Ohio Court of Appeals summarily overruled the assignment of error on the ground that the "testimony by police officer Schmid that his investigation had led him to believe that Tompkins, and not the other occupants of the van, owned the cocaine did not constitute inadmissible hearsay." (Doc. 10, Ex. 9, p. 4). As discussed above in rejecting petitioner's corollary prosecutorial misconduct claim, *see supra* pp. 22-23, this Court agrees with the state court's determination. In the absence of a showing that inadmissible hearsay was introduced at trial, petitioner has not demonstrated that he is entitled to relief based on his claim alleged in Ground Four of a violation of his rights under the Sixth Amendment's Confrontation Clause.

### E.  Petitioner Is Not Entitled To Habeas Relief Based On The Additional Claims Asserted In His "Traverse" Brief

Petitioner raises two more claims in his "traverse" brief in reply to the return of writ, which are not alleged as grounds for relief in the petition. He claims, as he did on direct appeal in the state courts, that his trial counsel was ineffective and that the evidence was insufficient to support his conviction on the cocaine possession charge. (Doc. 15, pp. 7-8). Petitioner has not sought leave to amend the petition to add these claims as additional grounds for relief in the instant action.

A traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief. *Burns v. Lafler,* 328 F.Supp.2d 711, 724 (E.D. Mich. 2004); *see also Murphy v. Ohio,* 551 F.3d 485, 502 (6th Cir.), *cert. denied,* 130 S.Ct. 397 (2009). The Court, therefore, declines to address the additional claims, which are not properly before it for consideration. *See, e.g., Murphy,* 551 F.3d at 502; *Tyler v. Mitchell,* 416 F.3d 500, 504 (6th Cir. 2005) (and cases cited therein) (holding that the district court did not err in declining to

24

address a claim that was first presented in the petitioner's "traverse" brief), *cert. denied,* 547 U.S. 1074 (2006).

In any event, for the reasons given above in recommending the denial of relief on the claims alleged in Grounds One through Four, petitioner is not entitled to relief based on any additional claim that his trial counsel was ineffective in failing to assert those claims as objections at trial. Moreover, petitioner is not entitled to relief based on the additional claim challenging the sufficiency of evidence. Upon review of the evidence presented at trial in the light most favorable to the prosecution, the Court finds, as the Ohio Court of Appeals reasonably determined on direct appeal in accordance with the applicable standard of review set forth in *Jackson v. Virginia,* 443 U.S. 307, 319 (1979), that "a rational trier of fact could have found that all the essential elements of the [drug possession] offense had been proved beyond a reasonable doubt." (Doc. 10, Ex. 9, p. 5).

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground One of the petition and the additional claims presented in his "traverse" brief, which this Court has concluded are procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[12] A certificate of appealability also should not issue with respect to the claims alleged in Grounds Two through Four of the petition, which were addressed on the merits herein, in the absence of a substantial showing that petitioner stated in any of those grounds a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c);

_____

[12]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in Ground One or in the additional claims raised in the "traverse" brief. *See Slack,* 529 U.S. at 484.

Fed. R. App. P. 22(b).

      3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: <u>July 16, 2010</u>      <u>s/ J. Gregory Wehrman</u>
     cbc                        J. Gregory Wehrman
                                 United States Magistrate Judge

C:\DATA\2010\july\09-357denypet.miranda.suppress-mtn.prosmisconduct-closingarg.confront-hearsay.wpd

26

# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

---

Eddrick Tompkins,
     Petitioner

       vs                             Case No. 1:09cv357
                                    (Dlott, C.J.; Wehrman, M.J.)

Warden, Dayton Correctional
Institution,
     Respondent

# NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **within 14 days** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).